HONORABLE RICHARD A. JONES

# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF WASHINGTON
# AT SEATTLE

| | |
|---|---|
| A.D., by and through his parents and guardians, E.D. and H.D., individually, on behalf of similarly situated individuals, and on behalf of T-MOBILE USA, INC. EMPLOYEE BENEFIT PLAN,<br><br>　　　　　Plaintiff,<br><br>　　v.<br><br>T-MOBILE USA, INC. EMPLOYEE BENEFIT PLAN; T-MOBILE USA, INC.; and UNITED HEALTHCARE SERVICES, INC.,<br><br>　　　　　Defendants. | CASE NO. 2:15-cv-00180-RAJ<br><br>ORDER |

ORDER - 1

## I.  INTRODUCTION

This matter comes before the court on Plaintiff A.D.'s unopposed motions for certification of the settlement class and for preliminary approval of the Settlement Agreement. Dkt. ## 27, 28.

For the reasons stated below, the court **GRANTS** the motion for certification and **DENIES** the motion for preliminary approval.

## II.  BACKGROUND

In February 2015, Plaintiff A.D., by and through his parents and guardians, E.D. and H.D., filed this case alleging that T-Mobile USA, Inc. Employee Benefit Plan ("Plan"); T-Mobile USA, Inc., and United Heathcare Services, Inc. (collectively, "T-Mobile") failed to comply with the Paul Wellstone and Pete Domenici Mental Health Parity and Addiction Equity Act of 2008 ("Parity Act"). Dkt. # 8. The Parity Act generally requires group health plans and health insurance issuers to cover medically necessary services to treat mental health conditions as defined by the terms of the plan and in accordance with applicable laws under the same terms and conditions as medical and surgical services. *See* 29 U.S.C. § 1185a(a)(3); 42 U.S.C. § 300gg-5(a)(3); 26 U.S.C. § 9812(a)(3).

The Employee Retirement Income Security Act ("ERISA") governs the health care plans at issue here, and thus Plaintiff brings his claims under its provisions. *See* 29 U.S.C. § 1002. Plaintiff's complaint sets forth three claims for relief: (1) breach of fiduciary duties pursuant to ERISA § 404(a)(1), 29 U.S.C. § 1104(a); (2) recovery of benefits, clarification of rights under terms of the plan, and clarification of rights to future benefits under the plan pursuant to ERISA § 502(a)(1)(B), 29 U.S.C. § 1132(a)(1)(B); and (3) to enjoin acts and practices in violation of the terms of the plans, to obtain other equitable relief, and to enforce the terms of the plans pursuant to ERISA § 502(a)(3), 29 U.S.C. § 1132(a)(3). Dkt. # 8 ¶¶ 27–40.

Plaintiff contends that T-Mobile has adopted a uniform policy excluding any coverage for Applied Behavior Analysis ("ABA") therapy to treat Autism Spectrum

Disorder ("ASD" or "Autism"), including any coverage that may be medically necessary. Dkt. # 8 ¶ 10. Plaintiff alleges that he was denied coverage for ABA therapy to treat his ASD, and when Plaintiff appealed, T-Mobile denied his appeals with the justification that ABA therapy was excluded from the Plan. *Id.*

The parties agreed to resolve, on a class-wide basis, the criteria for coverage on a prospective basis. Dkt. # 27, at p. 2-3. The proposed Settlement Agreement provides prospective relief following a "best practice" model for delivery of ABA therapy, as well as a settlement fund of $676,935.00 to address claims for reimbursement for any members who paid for ABA services out-of-pocket. *Id.* at 3. Any attorneys' fees, costs, claims administration costs, and an incentive award will also be drawn from this settlement fund. *Id.*

### III.   ANALYSIS

**A.  Motion for Certification of the Class.**

The parties' agreement to settle this matter is not itself a sufficient basis for approving the settlement. The settlement would require the Court to certify a class and dispose of the claims of its members. The Court has an independent obligation to protect class members. *Silber v. Mabon*, 957 F.2d 697, 701 (9th Cir. 1992). Even for a class certified solely for purposes of settlement, the Court must ensure that the class and its proposed representatives meet the requirements of Federal Rule of Civil Procedure 23 ("Rule 23"). *Staton v. Boeing Co.*, 327 F.3d 938, 952 (9th Cir. 2003). In addition, the Court must ensure that the settlement is "fair, reasonable, and adequate." Fed. R. Civ. P. 23(e)(2).

Plaintiff proposes that the Court certify the class as follows:
> All individuals who have been, are, or will be participants or beneficiaries under the T-Mobile USA, Inc. Employee Benefit Plan who have received, require, or are expected to require Applied Behavior Analysis (ABA) therapy for the treatment of autism and/or autism spectrum disorder.

ORDER - 3

Dkt. # 27, at pp. 1-2.

The court first considers whether the class Plaintiff hopes to certify satisfies the four prerequisites of Rule 23(a): numerosity, commonality, typicality, and adequacy of representation. The Court will then turn to whether the class satisfies one of the three sets of requirements of Rule 23(b). After that, the Court will address whether the settlement the parties have reached is, at least on a preliminary basis, fair, reasonable, and adequate.

1. <u>The Four Pre-requisites of Rule 23(a): Numerosity, Commonality, Adequacy, and Typicality.</u>

The class Plaintiff hopes to certify satisfy the numerosity and commonality requirements of Rule 23(a). The parties identified at least 548 unique individuals with ASD during the class period. Dkt. # 27, at p. 4. There are additional individuals with ASD who will most likely become participants or beneficiaries under the Plan who will need ABA therapy. Joinder in this case would be impracticable. Fed. R. Civ. P. 23(a)(1). In addition, the Court finds that there is a common question for all class members: Does T-Mobile's *de facto* exclusion of ABA therapy to treat ASD, even when medically necessary, violate the federal Mental Health Parity Act? Fed. R. Civ. P. 23(a)(2); *Mazza v. Am. Honda Motor Co., Inc.*, 666 F.3d 581, 589 (9th Cir. 2012) (commonality only requires a single significant question of law or fact).

While the numerosity and commonality requirements focus on the class, the typicality and adequacy requirements focus on the class representative. The representative must have "claims or defenses . . . [that] are typical of the claims or defenses of the class," and must "fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(3)-(4).

Plaintiff's claims are also typical of class members' claims where he, like every other class member, allegedly was denied coverage for ABA therapy to treat his ASD. *See Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1020 (9th Cir. 1998) (representative's claims are typical "if they are reasonably coextensive with those of absent class members; they need not be substantially identical.").

ORDER - 4

Questions of a class representative's adequacy dovetail with questions of his counsel's adequacy. Fed. R. Civ. P. 23(g)(4) ("Class counsel must fairly and adequately represent the interests of the class."). The court has no difficulty concluding that counsel has provided and will likely continue to provide adequate representation for the proposed class. Additionally, the claims and interests of Plaintiff are not in conflict with any interests of the proposed classes, and A.D.'s parents are familiar with the duties and responsibilities of being a class representative and will continue to diligently look out for the interests of all class members.  Dkt. # 29 (H.D. Decl.) ¶ 12.

2. <u>The Requisites of Rule 23(b)(1) for the ABA Class.</u>

Federal Rule of Civil Procedure 23(b)(1) allows for a plaintiff to pursue a class action if Rule 23(a) is satisfied, and if:

> (1) the prosecution of separate actions by or against individual members of the class would create a risk of
>> (A) inconsistent or varying adjudications with respect to individual members of the class which would establish incompatible standards of conduct for the party opposing the class, or
>>
>> (B) adjudications with respect to individual members of the class which would as a practical matter be dispositive of the interests of the other members not parties to the adjudications or substantially impair or impede their ability to protect their interests.

Fed. R. Civ. P. 23(b)(1). ERISA class actions "are typically certified under Rule 23(b)(1) and/or (b)(2) . . . ." *McCluskey v. Trustees of Red Dot Corp. Employee Stock Ownership Plan & Trust*, No. C09-448RSM, 268 F.R.D. 670, 677 (W.D. Wash. 2010). Rule 23(b)(1)(A) "focuses on the rights of parties opposing the class," while subpart (B) "focuses on the rights of unnamed class members." *Id.*  A class is appropriately certified under Rule 23(b)(1)(A) "where the party is obliged by law to treat the members of the

ORDER - 5

class alike (a utility acting toward customers; a government imposing a tax), or where the party must treat all alike as a matter of practical necessity."*Amchem Products, Inc. v. Windsor*, 521 U.S. 591, 614 (1997). A class action is appropriately certified under Rule 23(b)(1)(B) if "separate actions inescapably will alter the substance of rights of others having similar claims." *McCluskey v. Trustees of Red Dot Corp. Employee Stock Ownership Plan & Trust*, 268 F.R.D. at 677.

      Here, under the Parity Act and pursuant to the parties' preliminary Settlement Agreement, T-Mobile must treat all class members alike with regard to ABA therapy coverage for ASD. Variations in how participants or beneficiaries with ASD obtain coverage for ABA therapy would risk creating incompatible standards of conduct. Plaintiff and T-Mobile concede that at least 548 unique individuals were participants or beneficiaries to the Plan during the class period, which could likely lead to hundreds of lawsuits—all with merit in light of the Parity Act—against T-Mobile. The Court agrees that if some class members opt out and successfully obtain different coverage from T-Mobile through litigation, then this could substantially impair or impede the interests of other class members considering the functionality of the Plan. *See Barnes v. AT & T Pension Benefit Plan-Nonbargained Program*, 270 F.R.D. 488, 496 (N.D. Cal. 2010), ("Similarly, with respect to Rule 23(b)(1)(B), the resolution of Barnes' claim would be dispositive of other similarly situated plan participants because ERISA requires plan administrators to treat all similarly situated participants in a consistent manner.") (internal quotations omitted). Accordingly, the Court finds that the class should be certified under Rule 23(b)(1).

**B. Motion for Preliminary Approval of the Settlement Agreement.**

      The Court's findings on the issue of whether the settlement is fair, reasonable, and adequate are necessarily preliminary.

      Class members will release "any and all claims of any nature whatsoever that were brought, or that could have been brought against the Releasees, by the Named Plaintiff on behalf of the Class Member, including claims for any and all benefits, losses, opportunity

losses, damages, attorneys' fees, costs, expenses, contribution, indemnification or any other type of legal or equitable relief." Dkt. # 28-1 ("Settlement Agreement") ¶ 1.7.

Under the terms of the Settlement Agreement, T-Mobile will provide prospective coverage of medically necessary ABA therapy to treat Autism. Settlement Agreement ¶ 6.1. In doing so, T-Mobile agreed to eliminate the following exclusions: age exclusion, treatment limitations, habilitative exclusion, clinic-based exclusion, academic or educational exclusion, experimental/investigation exclusion, and any other exclusions that categorically deny ABA therapy to class members. *Id.* at ¶ 6.2.1-.7. The agreement also provides for a $676,935.00 fund for the class from which payment will be made for class members' claims for uncovered ABA, attorneys' fees, litigation costs, an incentive award to the Named Plaintiff, and the cost of claims administration/notice. *Id.* at ¶¶ 1.21, 8.2. Any funds that remain in the settlement fund after all payments are made will revert back to T-Mobile. Settlement Agreement ¶ 8.4.6.

Class members will be eligible for payment from the settlement fund upon submission of a claim form that verifies the Autism diagnosis, the date of diagnosis, the dates of treatments, the providers of treatments, the unreimbursed charges or debt incurred for the treatment, and verification that the treatment was medically necessary to treat the class member's Autism. Settlement Agreement ¶ 8.4.2. Class members must provide documentation to support their claim for reimbursements. *Id.* at ¶ 8.4.2.2. An independent claims processor will review the claims, confirm coverage with T-Mobile, ensure that there are no duplicate claims, and provide an opportunity for class members to cure any problems with a deficient claim. *Id.* at ¶ 8.4.3.

1. <u>Class Released Claims.</u>

A settlement agreement may preclude class members from bringing related claims in the future, "but only where the released claim is based on the identical factual predicate as that underlying the claims in the settled class action." *Hesse v. Sprint Corp.*, 598 F.3d 581, 590 (9th Cir. 2010) (internal quotations omitted). Here, the Settlement Agreement's Class Released Claims are phrased too broadly and appear to preclude class members

from bringing any claims that the Named Plaintiff could bring, even if those claims are beyond the scope of the pertinent factual basis. The Court recommends that the parties limit this provision to only those released claims related to T-Mobile's denials of coverage for ABA therapy. The Court respects the parties' cooperation in negotiating and is willing to consider other limiting language or additional clauses with exceptions to the broad release language.  However, without support from binding authority, the Court will not approve a settlement agreement that does not limit the released claims to those that are based on the "identical factual predicate as that underlying the claims in the settled class action." *Id.*

    2.  <u>Attorney's Fees and Costs, and Plaintiff's Incentive Award.</u>

Plaintiff has not provided the court with any information that would allow it to conclude that $676,935.00 is adequate and sufficient to pay the hundreds of class members.  Plaintiff states that the damages calculation is "based upon the same damages model that has ensured coverage of 100% of claims in other settlements." Dkt. # 28, at p. 3.  Plaintiff further directs the Court to review the settlement figure in *C.S. v. Boeing*, United States District Court for the Western District of Washington, Cause No. 2:14-00574-RSM because the parties used that case's settlement figure and "adjusted it to account for T-Mobile's smaller enrollment." *Id.* at 4.  Plaintiff does nothing to convince the Court that this case parallels *Boeing* so closely that those damages can be transposed to the class in this matter. Further, at least in *Boeing*, Plaintiff provided the Court with an estimate of the amount that would be claimed in that matter. *C.S., etc. v. The Boeing Co. Master Welfare Plan, etc.*, No. 2:14-cv-00574-RSM, Dkt. # 31. Plaintiff should note, however, that it is not the Court's responsibility to scour unrelated dockets to find settlement figures, especially when those settlement figures fail to offer insight into how those figures were calculated. To be sure, the Court is aware that Plaintiff is able to prove to the Court why a certain settlement figure is appropriate, as it did in *R.H., etc., v. Premera Blue Cross, Lifewise Health Plan of Washington*, No. 2:13-cv-00097-RAJ.

ORDER - 8

Plaintiff did not provide the Court with any calculations or any way to determine whether this settlement fund is fair, reasonable and adequate. The court has no way of knowing how much each claim costs, the approximate number of claims per claimant, or even the number of claimants, aside from it being in the hundreds. The Court is aware that Plaintiff's own reimbursement amounts to $6732.88. Settlement Agreement ¶ 8.5. By way of example, if 548 class members submit an equal reimbursement, then the amount claimed will be $3,689,618.24. If even sixteen percent of a potential class of 548 members submits an equal reimbursement, then the amount claimed is $590,338.92.[1] In that case, the remainder—$86,596.08—would not appear to be sufficient to cover Plaintiff's incentive award, administrative costs, and any fees or litigation costs that Plaintiff's attorneys will claim. Due to such calculations, the Court is skeptical that the $676,935.00 fund is sufficient for this class.

Courts are generally weary of settlement agreements that permit unrewarded fees to revert back to defendants rather than be added to the class fund. *Jones v. GN Netcom, Inc. (In re Bluetooth Headset Prods. Liab. Litig.)*, 654 F.3d 935, 947 (9th Cir. 2011). It appears that in this case, the parties agree that any funds left over after *all* payments have been made will revert to T-Mobile. The Court is satisfied that this provision is not the product of collusion because any unrewarded attorneys' fees will remain in the fund to pay for class members' claims.

The Settlement Agreement allows Plaintiff's counsel to collect up to thirty-five percent of the fund for attorney's fees. Settlement Agreement, ¶ 12.1. The Ninth Circuit has established a benchmark award for attorney's fees of twenty-five percent of the common fund. *Torrisi v. Tucson Elec. Power Co.*, 8 F.3d 1370, 1376 (9th Cir. 1993). Plaintiff's counsel concedes that, unlike prior cases with similar global settlements, this matter did not take "many years, extensive discovery, multiple motions, appellate work"

---

[1] The Court has found that a sixteen percent participation rate is within the normal range for participants in class actions. *See R.H., et al. v. Premera Blue Cross, et al.*, No. C13-97RAJ, Dkt. # 72, at 5:3-8.

ORDER - 9

or "a battle before the Washington Supreme Court." Dkt. # 28, at p.12. Plaintiff's counsel further informed the Court that due to the parties' cooperation, a settlement was reached "early in the litigation" such that "attorneys' fees and expenses for both parties were dramatically lower than in any other recent Mental Health Parity settlements." *Id.* And, "[c]lass counsel required little discovery to address [the] dispositive legal issue" in this matter. *Id.* at 19. It does not appear that Plaintiff's counsel will be eligible for fees that range far above the Ninth Circuit's benchmark. The Court expects that counsel will provide detailed billing records when it files its motion for attorney's fees and costs. Accordingly, the Court will reserve its ruling on attorney's fees until it has reviewed Plaintiff's motion for attorney's fees to determine whether an upward departure to thirty-five percent of the common fund is warranted. For the purpose of this preliminary Order, the relevant provision in the Settlement Agreement only secures the Defendants' agreement not to oppose a later motion for attorney's fees up to thirty-five percent. Settlement Agreement, ¶ 12.1.

The Settlement Agreement provides for an incentive award of up to $10,000 for A.D.'s parents. Settlement Agreement ¶ 12.3. To avoid the danger of named plaintiffs bringing class actions to increase their own monetary gain, courts generally preclude named plaintiffs from obtaining such a preferred position in the settlement. *Staton v. Boeing Co.*, 327 F.3d 938, 976 (9th Cir. 2003). With that in mind, the Ninth Circuit has approved incentive awards for named plaintiffs when the district court takes into consideration relevant factors, such as "the actions the plaintiff has taken to protect the interests of the class, the degree to which the class has benefitted from those actions, . . . the amount of time and effort the plaintiff expended in pursuing the litigation . . . and reasonable fears of workplace retaliation." *Id.* at 977 (internal quotations omitted).  In *Staton v. Boeing*, a case that Plaintiff relies on, the Ninth Circuit listed examples of cases in which incentive awards were reasonable. Many of these rewards amounted to fractions of a percent of the total settlement funds. *See id.* at 976 (finding that an incentive award of $5,000 to two class representatives in a settlement of $1.725 million was reasonable;

ORDER - 10

finding that an incentive award of $2,000 to five named plaintiffs in a settlement of $3 million was reasonable; finding that an incentive award of $25,000 to one named plaintiff in a settlement of $14 million was reasonable). In this case, Plaintiff requests an incentive award that amounts to approximately 1.5 percent of the total settlement fund. This is steep considering Plaintiff's admission that the proceedings in this matter were abbreviated as compared to prior, similar litigations. The Court expects that counsel will provide detailed records of the named plaintiff's role in this matter when it files its motion for attorney's fees and costs. Accordingly, the Court will reserve its ruling on the incentive award until it has reviewed Plaintiff's motion for attorney's fees to determine whether an award of up to $10,000 is warranted. For the purpose of this preliminary Order, the relevant provision in the Settlement Agreement only secures the Defendants' agreement not to oppose a later motion for an incentive award up to $10,000.  Settlement Agreement ¶ 12.3.

**C. Class Notice Package.**

For a class certified under Federal Rule of Civil Procedure 23(b)(1), "the court may direct appropriate notice to the class." Fed. R. Civ. P. 23(c)(2)(A). The Court finds that the form of notice that counsel provided, which it proposes to be mailed to all class members, is reasonable.

### ii.  CONCLUSION

For the reasons stated above, the court **GRANTS** Plaintiff's unopposed motion to certify the class (Dkt. # 27), and **DENIES** the unopposed motion for preliminary approval of the Settlement Agreement (Dkt. # 28). Plaintiff may file a single, renewed motion that addresses the concerns raised by the court no later than July 30, 2016. To the extent that the Settlement Agreement or Notice is revised, Plaintiff shall submit a redline version in addition to the revised version. Plaintiff should propose a new timeline, including (1) a deadline for the settlement website to be available to the public, (2) the date by which the parties must complete the initial mailing of the notice, (3) a deadline for filing the attorney's fees motion and making it available on the website, (4) a deadline for filing the motion for final approval, (5) a deadline for class members to submit claims, exclude

themselves, or file objections, (6) a deadline for the parties to submit responses to any objections, and (7) the final approval hearing that provides sufficient opportunity for class members to receive notice and determine whether they want to submit a claim or oppose before the final hearing.

Dated this 18th day of July, 2016.

The Honorable Richard A. Jones
United States District Judge

ORDER - 12